**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JANE DOE, L.S.,** *a pseudonym*, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 23-0342-KSM** |
| **CITY OF PHILADELPHIA**, *et al.*, | |
| Defendants. | |

## <u>ORDER</u>

**AND NOW**, this 27th day of January, 2026, upon consideration of nonparty Rebecca Rhynhart's Motion to Quash or Limit Plaintiff's Subpoena Ad Testificandum (Doc. Nos. 82, 84), Plaintiff's opposition brief (Doc. No. 86), and Rhynhart's reply brief (Doc. No. 87), and following oral argument held on January 14, 2026, the Court finds as follows:

1.      Nonparty Rebecca Rhynhart served as City Controller for the City of Philadelphia from January 2018 through October 2022. (Doc. No. 82 at 3.) On July 19, 2018, the Office of the City Controller issued a report auditing Philadelphia's workplace sexual misconduct policies, procedures, and payouts from July 2012 through April 2018. (*See* Doc. No. 86 at 19–64 (*Report on the Effectiveness of and Compliance with Sexual Harassment Policies and Procedures* (2018) (the "2018 Audit")).) And when the City failed to adopt the report's main recommended reform—instituting a centralized process for reporting claims—Rhynhart spoke out publicly on the issue. (*See* Doc. No. 86 at 112, 114–16.) On December 2, 2025, Plaintiff served former-Controller Rhynhart with a subpoena, requiring her to appear for a deposition and testify about the 2018 Audit, "as it relates to the Philadelphia Police Department" ("PPD"). (*See* Doc. No. 84.) Rhynhart now moves under Federal Rule of Civil Procedure 45 to quash the subpoena, or in

the alternative, limit its scope and duration.  (Doc. No. 82.)  Plaintiff opposes her motion and

asks the Court to order her appearance at the deposition.  (Doc. No. 86.)

       2.      Rule 45 states that the Court "must quash or modify a subpoena that . . . subjects a

person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  "When there is a motion to quash, the

subpoenaing party must first demonstrate that his request falls within the general scope of

discovery as defined in Rule 26(b)(1)."  *Jacobs v. City of Philadelphia*, No. 19cv4616, 2023 WL

4108835, at *2 (E.D. Pa. June 21, 2023).  The burden then shifts to the subpoenaed party to

demonstrate that the subpoena will cause an undue burden.  *Frank v. Honeywell Intern. Inc.*,

No. 15mc172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015).  "Pertinent factors in the

undue burden analysis include relevance, the need for the information requested, whether the

information can be obtained by other means, burdens the subpoena may impose, the status of the

recipient as a non-party, and the costs of compliance."  *Rardon v. Falcon Safety Prods., Inc.*,

Nos. 23-1594, 23-1596, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023).[1]

---

[1] Some district courts in this Circuit have required the nonparty to demonstrate the subpoena "will cause it a 'clearly defined and serious injury'" before considering the undue burden analysis.  *See, e.g.*, *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa. 2016); *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) (quoting *City of St. Petersburg v. Total Containment, Inc.*, Case No. 06cv20952, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008)).  Other district courts, however, have not required such a showing.  *See, e.g.*, *White v. Devereux Found.*, No. 23cv2060, 2024 WL 5668920, at *2 (E.D. Pa. Jan. 12, 2024); *Frank*, 2015 WL 4770965, at *4.  The Court finds the latter line of cases more persuasive.  For one, although the opinion is unpublished, the Third Circuit in *Rardon* made no mention of a preliminary requirement for the subpoenaed party to show a "clearly defined and serious injury."  2023 WL 5347298, at *2.  For another, the "clearly defined and serious injury" requirement appears to have been taken from cases where the plaintiff sought a protective order under Rule 26(c) as an alternative to an order quashing the subpoena under Rule 45.  *See, e.g.*, *Plexicoat Am. LLC v. PPG Architectural Finishes, Inc.*, No. 13cv3887, 2015 WL 13873459, at *1 n.2 (E.D. Pa. Mar. 19, 2015) ("[T]he Court may also, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'  Fed. R. Civ. P. 26(c)(1).  In demonstrating 'good cause' for the issuance of a protective order, the moving party must demonstrate 'that disclosure of the discovery materials will cause a clearly defined and serious injury.'" (second citation omitted)); *see also Hu v. Merck Sharp & Dohme LLC*, No. 23cv754, 2023 WL 5598450, at *2 (E.D. Pa. Aug. 29, 2023) (discussing motion to quash standard under Rule 45 and separate motion for protective order standard under Rule 26, in context of motion asking the Court to limit burden of subpoena served on a nonparty).  Although both Rule 26 and Rule 45 may apply when a nonparty, like Rhynhart here, argues that compliance with a subpoena would

**Step 1: Rule 26(b)(1) Analysis**

3.      Plaintiff has shown that the 2018 Audit, Rhynhart's public comments on the same, and Rhynhart's testimony about her office's investigation are at least minimally sufficient to fall within the scope of Rule 26(b)(1).  Under this Rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  The requests here are relevant to Plaintiff's claims against the City.  "[A] Rule 45 subpoena to produce documents must fall within the proper scope of discovery as defined by Rule 26(b)(1)."  *Pace-O-Matic, Inc. v. Eckert, Seamans Sherin & Mellott, LLC*, No. 20cv292, 2025 WL 1372835, at *3 (M.D. Pa. May 12, 2025).  Discovery under this Rule is broad, with Rule 26(b)(1) generally permitting discovery "of any items that are relevant or may lead to the discovery of relevant information."  *Id.* (quoting *Wertz v. GEA Heat Exchangers Inc.*, No. 14cv1991, 2015 WL 8959408, at *1 (M.D. Pa. Dec. 16, 2015)).  The term "relevant" encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Id.* (quoting *Green*, 314 F.R.D. at 171).

4.      Here, Plaintiff alleges that former Philadelphia Police Detective, Defendant Donald Suchinsky's conduct—sexually harassing and assaulting the mother of a homicide victim during his investigation into the murder—is indicative of a City custom "of allowing officers, detectives, and agents of the [PPD], like Detective Suchinsky, to use the police badge as a means of exercising control over and manipulating control over persons with whom they came into

---

cause an undue burden, the Court has not found any persuasive explanation as to why Rule 26's standard should be considered a prerequisite to Rule 45's undue burden analysis.  In any event, the issue may be purely academic because it is hard to imagine a case where a court could find undue burden *without* the subpoenaed party necessarily demonstrating that compliance would cause a "clearly defined and serious injury."  *Cf. Rardon*, 2023 WL 5347298, at *3 (not requiring a specific showing of "clearly defined and serious injury" but nevertheless noting that when the district court weighs the Rule 45 undue burden factors, the harm to the subpoenaed party is relevant and "[t]he hypothetical risk of responding to future subpoenas" does not "alone constitute[ ] an undue burden").

contact." (Doc. No. 10 at ¶ 178.) Plaintiff also alleges that the City has a "widespread culture" of "authorizing and/or acquiescing [to] sexual misconduct." (*Id.* at ¶ 180; *see also id.* at ¶ 123 (alleging that "there are numerous instances which have been concealed from the public, investigated internally by the City and/or Internal Affairs, and/or resolved confidentially," further signifying the "laissez-faire approach to oversight and discipline of officers in the [PPD] who have engaged in sexual misconduct").) Last, Plaintiff claims the City failed to train supervisors to appropriately "identify and respond to the incidents of sexual grooming, assault, and harassment amongst the police force." (*Id.* at ¶¶ 188–89).)

     5.     The 2018 Audit and Rhynhart's public comments about the City's failure to appropriately respond to the audit are somewhat relevant to these issues. The 2018 Audit assesses "incidents and complaints" of sexual misconduct "over the period of July 2012 through April 2018" and finds that they "paint a troubling picture of a [City] policy and procedures that do not protect or support victims of sexual misconduct and improperly prepare supervisors to receive, investigate and resolve complaints." (Doc. No. 86 at 20.) The audit and Rhynhart's comments fall within the relevant 5-year lookback period for *Monell* discovery. (*See* Doc. No. 24 at 27 n.6.) And although the audit's focus was on *workplace* sexual misconduct[2], the findings detailed in the report—as to the deficiencies in the City's procedures for reporting, investigating,

---

[2] (*See, e.g.*, Doc. No. 86 at 20 (considering whether the City "performs investigations into *employee* complaints appropriately" (emphasis added); *id.* at 21 (finding the City's Sexual Harassment Prevention Policy "does not adequately meet the needs *of its employees*" in that "it does not provide *an employee* who wants to report harassment with information about which reporting option is best" nor does it give "*supervisors* . . . thorough instructions on how to investigate a complaint, when to elevate it, or what information to document during the complaint process" (emphases added)); *id.* at 23 (discussing consideration of complaints by the City's EEO [equal employment office] unit); *id.* at 27 (discussing "sexual harassment" as that phrase is defined by the Equal Employment Opportunity Commission")); *id.* at 31 (explaining that the audit considered "copies of *employee* complaints along with details pertaining to their eventual resolution" (emphasis added); *id.* at 32 (explaining that the audit considered interviews with "departmental personnel and EEO officers, chiefs of staff or administrative services directors to determine how they address *employee* complaints of sexual misconduct" (emphasis added)).)

and, in particular, disciplining City employees for substantiated claims of sexual misconduct[3]—
fall within the broad definition of "relevant" discovery. *See Philadelphia Workforce Dev. Corp.
v. KRA Corp.*, 673 F. App'x 183, 190 (3d Cir. 2016) ("Relevance is a low bar. . . .").  As do
Rhynhart's comments on the City's failure to implement a centralized procedure for reporting
workplace harassment.[4]  If the City lacked proper policies and procedures for reporting,
investigating, and disciplining sexual misconduct in the workplace, it is conceivable that the City
also had a custom of tolerating sexual misconduct that went beyond mere employee-on-
employee harassment.

6.      Because the results of the 2018 Audit, and Rhynhart's comments about the same,
fall within the broad definition of relevant discovery, the Court finds, by extension, that
Rhynhart's deposition testimony about the audit's scope and findings is equally relevant.

**Step 2: Undue Burden Analysis**

7.      Although Plaintiff has demonstrated that Rhynhart's testimony is relevant
discovery, the Court will nevertheless grant Rhynhart's motion in part and limit the scope of the
subpoena because full compliance would impose an undue burden.  As noted above, the factors
pertinent to this inquiry "include relevance, the need for the information requested, whether the

---

[3] (*See, e.g.*, Doc. No. 86 at 22 ("Our testing also showed that 59% of supervisors, managers and executive staff had not received sexual harassment prevention training in the last five years."); *id.* ("As part of the audit, we found that discipline for substantiated claims of sexual misconduct is not commensurate with offenses, varied greatly between departments, and in five cases was more severe for lower level employees than for supervisors . . . .").)

[4] Like the 2018 Audit, Rhynhart's comments were focused on the City's failure to protect its workers.  (*See, e.g.*, Doc. No. 86 at 112 (explaining that the City needs to institute a centralized reporting procedure in part "to ensure that victims are heard, perpetrators are dealt with appropriately, *and superiors take action to protect their subordinates* and are held accountable when they don't" (emphasis added)); *id.* at 114 ("Eight months after my office issued a report, the city hasn't done enough *to protect its workers* from sexual misconduct or to support them if they are a victim." (emphasis added)).)

information can be obtained by other means, burdens the subpoena may impose, the status of the recipient as a non-party, and the costs of compliance." *Rardon*, 2023 WL 5347298, at *2.

8.    First, although Rhynhart's deposition testimony meets the broad definition of relevance, that relevance is only minimal.  As noted above, *see supra* p. 4 & n.2, p. 5 n.4, the 2018 Audit and Rhynhart's public comments were focused on the City's procedures for handling *workplace* sexual harassment.  They do not appear to have considered the precise issue presented in this case, which is whether the City has a custom of police officers using their positions of power to sexually harass, assault, and/or exploit *members of the public* who are involved in criminal investigations.  The 2018 Audit did not consider the policies in place for members of the public to report misconduct, whether those complaints were appropriately investigated, or whether officers found responsible of such misconduct were properly disciplined.  This factor thus, at most, weighs only marginally in favor of allowing the deposition.

9.    The remaining factors weigh in favor of quashing the subpoena or are neutral. Given the limited relevance of the 2018 Audit and Rhynhart's public comments, the Court finds Plaintiff's need to depose Rhynhart about the audit to be only minimal.  Similarly, Plaintiff has a copy of the 2018 Audit, which details the scope of the audit and the conclusions reached by the Controller's Office.  In the context of this case, it is unclear how Rhynhart's deposition testimony would materially add to those conclusions except possibly to explain whether the audit in any way considered the City's response to sexual misconduct outside of the workplace.[5]

---

[5] This case, and the instant dispute, is markedly different from *McCowan v. City of Philadelphia*, where this Court allowed the plaintiffs to take Rhynhart's deposition.  No. 19cv3326, 2020 WL 4347370, at *1 (E.D. Pa. July 28, 2020).  For one, unlike here, the plaintiffs in *McCowan* were former Philadelphia Police Officers, who brought claims for sexual harassment and hostile work environment against the City of Philadelphia and multiple PPD employees, including former Police Commissioner Richard Ross.  The 2018 Audit's conclusions and Rhynhart's public statements about whether the City implemented any changes in response to the 2018 Audit were thus extremely relevant evidence in the context of that case. *Id.* at *3.  For another, in *McCowan*, Rhynhart moved to quash her deposition subpoena because she was

Thus, the second and third factors weigh slightly in favor of quashing the subpoena.  Next, although the Court is mindful that "[t]he hypothetical risk of responding to future subpoenas" does not "alone constitute[ ] an undue burden," *Rardon*, 2023 WL 5347298, at *3, the Court also understands Rhynhart's concern that she may be forced to sit for depositions every time a plaintiff sues the City for an employee's sexual misconduct.  Indeed, this is the second case before the undersigned in which a plaintiff has sought to depose her about the 2018 Audit.  Rhynhart has not, however, identified any other cases where she has been deposed about the audit.  Accordingly, this factor also weighs in favor of quashing the subpoena, albeit only marginally.  Fifth, Rhynhart is a nonparty, who has not served as City Controller in more than three years, and thus the fifth factor weighs in favor of quashing the subpoena.  Finally, neither party has discussed the cost of compliance, so the final factor is neutral.

10.     Weighing these factors together, the Court finds Rhynhart has demonstrated that full compliance with the subpoena in this action would impose an undue burden.  *See Jacobs*, 2023 WL 4108835, at *2 (granting motion to quash subpoena seeking communications about a nonparty's allegations of retaliation against the Philadelphia Police Department because the events giving rise to the communications "are too far removed to be relevant to plaintiff's action on the issue of retaliation").  That said, the burden to Rhynhart is not so substantial that she can avoid all discovery related to the 2018 Audit.  For this reason, and because the audit and Rhynhart's comments about it are somewhat relevant to Plaintiff's claims against the City, the Court will allow Plaintiff to depose Rhynhart, but for no more than two hours.[6]

---

entitled to limited immunity as a high-ranking government official and because her deposition was precluded by the deliberative process privilege, not because her deposition imposed an undue burden.  *Id.* at *1.

[6] During oral argument on the motion to quash, Rhynhart's counsel proposed this relief in the alternative.

* * *

For the reasons discussed above, it is **ORDERED** that the motion to quash is

**GRANTED IN PART** and **DENIED IN PART.**  Rhynhart shall comply with the subpoena and

appear for a deposition of no more than **two hours**.

**IT IS SO ORDERED.**

/s/*Karen Spencer Marston*
_____
KAREN SPENCER MARSTON, J.